NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0004n.06

Case No. 22-1561

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** Jan 04, 2024 KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| SHANE LEE HENDERSON, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: GILMAN, READLER, and MATHIS, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** After serving two years of a state prison sentence, Shane Lee Henderson was offered parole. As a condition of his release, Henderson agreed to allow officers to search his "person and property" on demand. That provision would become noteworthy when officers later received a tip that Henderson, while on parole, was selling drugs and possessing guns. The officers obtained a warrant for Henderson's arrest and, soon thereafter, executed the warrant after locating Henderson in his girlfriend's car. There, officers discovered drugs and related paraphernalia.

Henderson moved to suppress the fruits of the search. He argued that the vehicle was not encompassed by the consent to search he gave in agreeing to the terms of his parole. But irrespective of his parole condition, the officers were entitled to search the car incident to Henderson's arrest. Accordingly, we affirm the district court's denial of Henderson's motion.

**I.**

While serving a state prison sentence, Shane Henderson was offered parole. That offer contained several conditions on his future conduct, all of which Henderson agreed to honor. Yet he struggled to meet those commitments, as first evidenced by his failure to appear in state court for a hearing. A warrant for his arrest soon issued. Making matters worse, officers received a tip that Henderson had a gun in his home, two guns in his car, and illegal drugs—all of which, if true, also violated the terms of his parole. Based on this tip and an earlier positive drug test, Henderson's parole officer obtained a second arrest warrant.

The next day, officers traveled to Henderson's workplace to arrest him. They discovered Henderson sitting alone in the driver's seat of his girlfriend's car, the door ajar. When he saw the officers approaching, Henderson exited the car and started walking away. The officers arrested Henderson immediately. Inside the car, they found drug paraphernalia and significant quantities of methamphetamine, fentanyl, heroin, and cocaine.

The government charged Henderson with possession of controlled substances with the intent to distribute, in violation of various subsections of the federal Controlled Substances Act. Believing that the underlying search was unlawful, Henderson moved to suppress the use of the items discovered in the vehicle. The district court denied the motion, holding that the search was authorized by Henderson's parole order. Henderson conditionally pleaded guilty and, following a timely appeal, now asks us to reverse.

**II.**

To evaluate the district court's order, we employ a mixed standard of review: we review findings of fact under the clear-error standard, and we review conclusions of law de novo. *United*

*States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020) (citation omitted). We also view the evidence in the light most favorable to the district court's conclusion. *Id.*

Henderson's case blends issues of federal and state law, so we begin with some words on the relevant legal backdrop. As a general rule, the Fourth Amendment proscribes "unreasonable searches." U.S. CONST. amend. IV. Applying this prohibition to the parole setting, the Supreme Court, in *Sampson v. California*, 547 U.S. 843 (2006), held that a California parole condition allowing for warrantless, suspicionless searches was reasonable. *Id.* at 846. Because "parole is an established variation on imprisonment of convicted criminals," the Supreme Court explained, parolees "have severely diminished expectations of privacy by virtue of their status alone." *Id.* at 850, 852 (citation omitted). Given these diminished expectations, as well as a state's penological interests in supervising parolees, the provision at issue did not run afoul of the Fourth Amendment. *Id.* at 851–55.

In *Sampson*'s wake, Michigan enacted a law imposing a parole condition like the one in California. Today, before a Michigan inmate may be released on parole, he or she must "provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer." Mich. Comp. Laws § 791.236(19). All agree that Henderson had provided such consent, was on parole, and was subject to this condition when the car he was occupying was searched.

Henderson tailored his appeal to track these legal developments. Acknowledging that *Sampson* applies, he instead contests the search under Michigan law. He argues that § 791.236—which on its face permits warrantless, suspicionless searches—is cabined by Rule 791.7735 of the Michigan Administrative Code, which requires consent, reasonable suspicion, plain view, or a corresponding arrest before a search.

Here, we confront an unanswered question of Michigan law: whether Rule 791.7735, which seemingly narrows an officer's ability to conduct a warrantless search of a parolee, limits the scope of § 791.236, a statute that appears to grant officers greater search authority. The government says the statute operates independently. Henderson, on the other hand, favors Rule 791.7735. The district court waded into the debate, ultimately agreeing with the government that § 791.236 controlled. We, for our part, will affirm the denial of a motion to suppress "if the district court's conclusion can be justified for any reason." *Trice*, 966 F.3d at 512 (citation omitted). And doing so in a way that avoids resolving an unsettled question of state law is especially prudent. *See, e.g.*, *Jackson v. City of Cleveland*, 925 F.3d 793, 808 (6th Cir. 2019) ("Federal courts generally avoid interpreting unsettled state law because state courts are in the better position to apply and interpret their own jurisdiction's law." (citation and quotation marks omitted)). Here, prudence wins out.

Assuming, for argument's sake, that Henderson has the better view on the interplay between competing state policies, we would still affirm the district court because Rule 791.7735's terms were satisfied. The Rule authorizes a warrantless search when it is "[i]ncident to a lawful arrest [for a parole violation]." Mich. Admin. Code r. 791.7735(1)(a). Here, two outstanding parole-related warrants authorized Henderson's arrest. So when law enforcement encountered Henderson in his girlfriend's car and arrested him, Rule 791.7735 permitted them to conduct a search incident to that arrest.

Nor do we take issue with the scope of that search. Rule 791.7735(1)(a) does not speak to the point. In the Fourth Amendment context, a vehicle search incident to arrest is permissible if it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (citation omitted). With no indication that a search

4

incident to arrest under Rule 791.7735(1)(a) is any narrower, we apply the Fourth Amendment standard. *See People v. Waller*, No. 33056, 2017 WL 3090621, at *4 (Mich. Ct. App. July 20, 2017) (permitting a broad search incident to arrest under Rule 791.7735(1)(a)); *cf. People v. Mead*, 503 Mich. 205, 217 (2019) (noting that *Gant* controls searches incident to arrest in Michigan). And viewed against that backdrop, this search was largely routine. One of "the offense[s] of arrest" was a parole violation for possessing drugs and guns, both of which can be concealed in a car. On that basis, the search incident to Henderson's arrest could lawfully include the vehicle in which he was a "recent occupant." *Gant*, 556 U.S. at 343; *see also id.* at 344 (noting that an arrest for drug offenses can justify a vehicle search and referencing two drug cases, *New York v. Belton*, 453 U.S. 454 (1981), and *Thornton v. United States*, 541 U.S. 615 (2004), as examples).

Because we can resolve Henderson's case on this narrow basis, many of his arguments are irrelevant. One that remains salient, however, is his assertion that the district court erred by not honoring his request to hold an evidentiary hearing on his motion to suppress. We review this decision under the abuse-of-discretion standard. *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (citation omitted). That means that we will reverse the district court if "we are firmly convinced that the trial court committed a clear error of judgment." *Martin v. United States*, 889 F.3d 827, 831 (6th Cir. 2018) (citation omitted).

We find no such error here. In general, "a defendant is not entitled to an evidentiary hearing if his argument is entirely legal in nature." *Ickes*, 922 F.3d at 710 (citation and quotation marks omitted). To justify such a request, Henderson needed to "set forth sufficiently definite, specific, detailed, and non-conjectural reasons for why contested factual issues cast doubt on [the] search's validity." *United States v. Moore*, 999 F.3d 993, 999 (6th Cir. 2021) (citation and quotation marks omitted). Henderson's motion did not do so. As the district court noted, the facts surrounding the

search were largely undisputed.  Nor did Henderson contest the validity of the underlying arrest warrants.  At bottom, his argument in the district court boiled down to the contention that the searched vehicle fell outside the scope of the § 791.236 clause in his parole order.  Because that question was "entirely legal in nature," it is difficult to see the value of an evidentiary hearing.  And in any event, it was not an abuse of discretion to decline to hold one.  *Ickes*, 922 F.3d at 710 (citation omitted).

*       *       *       *       *

We affirm the judgment of the district court.